| | |
|---|---|
| GREATER CAROLINA EAR NOSE AND THROAT, P.A., <br><br> Plaintiff, <br><br> v. <br><br> ALEX M. AZAR, II, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendants. | **PLAINTIFF'S VERIFIED COMPLAINT AND MOTION FOR INJUNCTIVE RELIEF** |

Plaintiff Greater Carolina Ear Nose and Throat, P.A. ("Plaintiff"), by and through undersigned counsel, complaining of Defendant, and allege and states as follows:

## INTRODUCTION

1. This action arises under Title XVII of the Social Security Act, 42 U.S.C. §§ 1395 *et. seq.* and the Administrative Procedure Act, 5 U.S.C. §§ *et.seq.*

2. Plaintiff is a North Carolina professional corporation.

3. Defendant is Alex M. Azar, II, in his official capacity as Secretary of the United States Department of Health and Human Services ("DHHS").

4. This is a civil action for a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction to prevent DHHS' threatened recoupment of past, present and future Plaintiff's Medicare reimbursement billing claims submitted to its contracted administrative fiscal agent, Palmetto GBA, LLC ("Palmetto"), based upon a determination that Plaintiff is subject to recoupment for prior procedures which were not reasonably medically necessary, prior to exhaustion of Plaintiff statutorily guaranteed appeal rights.

5. Plaintiff does not ask this Court to decide the substantive merits of its administrative appeal. In fact, Plaintiff has filed an immediate and timely appeal of the overpayment determination and plans to proceed through the administrative appeals process as expeditiously as possible.

6. However, DHHS has frustrated Plaintiff's right to have an administrative review by failing and refusing to properly and adequately staff its administrative hearing process to the extent that there is presently at least a 1200-day backlog of cases before an appellant can receive an administrative hearing on the merits of an adverse DHHS determination of a Medicare overpayment.

7. Due to the irreparable harm that will be caused by immediate recoupment of its Medicare reimbursement claims, both to Plaintiff and the rural and poor communities that it serves, Plaintiff requests only that this Court issue an order staying the recoupment of Plaintiff's Medicare reimbursement claims (i.e., maintain the *status quo*) pending completion of the administrative appeals process. Without such relief, both Plaintiff and the communities it serves will be irreparably harmed before any meaningful opportunity for administrative review.

8. Centers for Medicare and Medicaid Services ("CMS") is the operating division of DHHS charged with the administration of Medicare and Medicaid. DHHS, through its Qualified Independent Contractor ("QIC"), C2C Innovative Solutions, Inc. ("C2C"), has indicated to Plaintiff, by letter dated February 23, 2018, that it was implementing recoupment of $1,704,223.52 of Medicare billing claims effective April 4, 2018, for what it claimed were overpayment of claims that were not reasonably medically necessary during the period June 1, 2015 through December 31, 2016. **See Exhibit "A".**

9. According to a June 21, 2017 letter, the overbilling determination was initiated because of a review of 36 claims from 30 Medicare beneficiaries identified in an audit review. **See Exhibit "B".**

10. According to the audit review the identified problems with the claims reviewed were: (1) the documentation submitted did not support medical necessity on the thirty-six claims reviewed; and, (2) the documentation submitted did not have a date of service – only a date that the documentation was signed. **See Exhibit "B"**.

11. The stated reasons for the overpayment determination are fundamentally and provably false.

12. Plaintiff is currently serving a total of over 1000 Medicare and Medicaid beneficiaries. Plaintiff serves rural and poor individuals in and around the counties of Robeson and Richmond Counties offering services where other providers decline to serve. If Plaintiff's reimbursement billing privileges are revoked it would be forced to shutter its business, terminate the employment of staff, and transfer its patient population to other providers at great inconvenience to its patients and could be forced to transfer these some patients in the middle of their service.

13. Defendant's proposed recoupment action violates Plaintiff's due process rights in the following ways:

(a) Plaintiff has not been allowed an opportunity to be heard on the merits of the overpayment determination through the established regulatory process;

(b) The regulatory process is procedurally and constitutionally flawed in that it allows Defendant to begin the recoupment process prior to the Medicare provider (Plaintiff) being allowed a pre-deprivation hearing on the merits;

(c) The regulatory process is procedurally flawed in practice due to the fact that the Defendant is not now, and has not, complied with the statutory and regulatory mandate to render decisions on administrative appeals within 90 days of the filing of an administrative appeal request before an administrative law judge; and,

(d) Defendant's recoupment action is constitutionally violative of Plaintiff's

3

substantive due process rights in that the Defendant's contractors, Palmetto and C2C, the entities who have implemented the overpayment determination and who have denied its redetermination and reconsideration requests, are self-interested in maintaining the overpayment due to the fact that they are compensated on a contingency and bonus basis, thereby providing them a direct financial interest in the outcome of the overpayment determination and recoupment action.

14. At least one federal Circuit Court of Appeals, who has considered the current issues, have found that the Defendant's administrative appeals process is flawed and in violation of the rights of providers. *Am. Hosp. Ass'n v. Burwell (AHA I),* 812 F.3d 183, 185-87 (D.C. Cir. 2016), and *Am. Hosp. Ass'n v. Price (AHA II),* 867 F.3d 160 (D.C. Cir. 2017).

15. Prior to filing this suit, Plaintiff completed the first two stages of a four- stage administrative appeals process required by law.

16. The third stage of the administrative appeal process is an appeal before an administrative law judge. Plaintiff has formally and in a timely manner requested a hearing before an administrative law judge.

17. Plaintiff has been informed that there is a 1200 plus day backlog for obtaining a hearing before an administrative law judge. **See Exhibit "C".**

18. A hearing before an administrative law judge is the first stage at which Plaintiff will have to challenge the merits of the overpayment determination before a neutral and detached hearing officer.

19. The overpayment determination is fatally flawed on its merits.

20. Plaintiff has had two board certified otolaryngologists to review the same set of patient records reviewed by Defendant's contractors who have alleged an overpayment to Plaintiff due to their claim that procedures performed and treatment provided was medically unnecessary. **See Exhibits "E"** and **"F".**

4

21. These two board certified otolaryngologists have identified a misinterpretation on the part of Defendant's reviewing contractors, who are not clinical medical providers, of the relevant guidelines for determining medical necessity of the medical procedures in question.

22. Plaintiff has no adequate remedy at law and seeks only to preserve the status quo pending the outcome of the administrative hearing. Plaintiff therefore seeks a Temporary Restraining Order and an injunction preventing the Defendant from recouping the flawed overpayment determination until Plaintiff has completed the administrative appeals process.

## PARTIES

23. Plaintiff is a Medicare Part B medical provider in the specialist area of otolaryngology with clinics located in Robeson and Robinson counties in North Carolina. Plaintiff has been in operation for the last 18 years and has served thousands of Medicare patients during that time. **See Exhibit "D", declaration of Anita L. Jackson, M.D.**

24. Plaintiff participates in the Medicare program pursuant to a provider agreement with Defendant DHHS and applicable federal statutes and regulations.

25. Defendant is sued in his official capacity as Secretary of DHHS, an agency of the United States government. As Secretary, he is responsible for administering the Social Security Act, 42 U.S.C. §§ 301, et seq., and in particular the Medicare Act, 42 U.S.C. §§ 1395, et seq.

## JURISDICTION AND VENUE

26. This action arises under the Social Security Act, 42 U.S.C. §§ 301, et seq., implicating the Medicare Act, 42 U.S.C. §§ 1395 et seq. as well as the Fifth and Fourteenth Amendments to the United States Constitution.

27. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, 28 U.S.C. § 1651, 42 U.S.C. § 405, 42 U.S.C. § 1395ii; and under the Court's general equity powers. Plaintiff is also entitled to the judicial relief it seeks pursuant to the Administrative

Procedure Act, 5 U.S.C. § 705.

28. In particular, this Court has jurisdiction over this action under 28 U.S.C. § 1331 pursuant to the "no review" exception to the usual requirement of exhaustion of administrative remedies. Exhaustion of administrative remedies under the Medicare Act or Medicaid Act is not required where exhaustion would mean "no review at all" or "the practical equivalent of a total denial of judicial review."

29. If this court does not issue injunctive relief, Plaintiff will have had no review of the overpayment determination on the merits before irreparable harm takes place, and once the irreparable harm takes place, the theoretically available administrative remedies could be too late and of no value.

30. Although Plaintiff is challenging these claims through the administrative process, Defendant's administrative law judges have no authority to issue an injunction and lack the power to maintain the status quo pending a final decision.

31. Plaintiff is facing the practical equivalent of a denial of administrative and judicial review -- the health-care regulatory equivalent of a death sentence. Administrative remedies need not be exhausted in this situation prior to obtaining very limited procedural relief pending substantive review. As a provider of medical services Plaintiff is dependent on Medicare to remain open. Plaintiff is entitled to temporary injunctive relief in federal court against recoupment of an overpayment determination pending resolution of the alleged overpayment in the administrative process.

32. Plaintiff remains in business at present. Plaintiff is not seeking damages.

33. This action is about Plaintiff's survival pending due process review of a precipitous and unlawful decision and does not directly involve a recoupment dispute. By refusing to defer recoupment pending such review, DHHS seeks to override the administrative appeals process,

6

Case 7:18-cv-00103-BO   Document 1   Filed 06/07/18   Page 6 of 17

including affording an opportunity for a hearing before an impartial tribunal.

34. Further, this Court has jurisdiction over this action under 28 U.S.C. § 405 pursuant to the "waiver" exception to the usual requirement of exhaustion of administrative remedies. Plaintiff has appealed and requested an administrative hearing in order to be heard for the very first time on the merits of the alleged overpayment claim by Defendant.

35. There is substantial evidence that the determination finding that overpayment has occurred is in fact invalid. **See Exhibits "E" and "F".**

36. Exhaustion of administrative remedies under the Medicare Act is not required where the Plaintiff s interest in having a particular issue resolved promptly is so great that the requirement is considered waived. Plaintiff's interest in having its procedural due process claim, as well as its substantive due process claims, resolved promptly is so great that the requirement should be considered waived.

37. Plaintiff's request for an injunction based on the claims asserted herein, is "collateral" to Plaintiff's substantive claims. To reiterate, Plaintiff does not ask this Court to resolve the merits of this underlying substantive dispute – whether claims were submitted without medical necessity. It merely requests that this Court ensure Plaintiff's survival while the administrative process moves forward.

38. An erroneous termination would harm both Plaintiff and its patient population irreparably, and that the facts of this case give rise to a sufficient threat of irreparable harm so as to justify waiver of the administrative exhaustion requirement. Termination of Plaintiff's provider agreements, which has not yet occurred, would result in irreparable harm not only to Plaintiff, through destruction of its goodwill and its business, and potential closure, but also to all of its patients and community, who would be at risk of being left without services. **See Exhibit "D", declaration of Anita L. Jackson, M.D.**

39. By contrast, there is no indication that DHHS will suffer any prejudice from mere deferral of its precipitous recoupment of Plaintiff's Medicare reimbursement claims in that: (a) Defendant has not alleged any ongoing conduct as a basis for recoupment; instead the last conduct procedures alleged by Defendant to have been medically unnecessary dates back over a year to December 2016; and (b) as set forth in the appeal, there is at least some evidence before DHHS that the overpayment determination is based upon their misinterpretation of diagnostic guidelines for the diagnosis of chronic rhinosinusitis.

40. In light of the serious and substantial threat of irreparable harm to both Plaintiff and its patients, Plaintiff's interest in having a determination of its right to injunctive relief is so great that deference to DHHS's desire to deprive Plaintiff and its patients of protection pending exhaustion of the administrative process is inappropriate.

41. Additionally, under the Mandamus Act, the district courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. This action is brought to compel the Defendant to perform duties owed to Plaintiff, and thus provides a basis for jurisdiction, including the duty expressly set forth in DHHS' own regulations which afford Plaintiff an opportunity an administrative hearing and a decision within 90 days of a hearing request.

42. The exhaustion provisions of the Medicare Act (42 U.S.C. § 1395ii) and Social Security Act (42 U.S.C. § 405(h)) apply only to actions brought under 28 U.S.C. §§ 1331 and 1346, and do not affect a mandamus action brought under 28 U.S.C. § 1361. A federal district court has mandamus jurisdiction in cases against the Defendant with respect to actions under the Medicare statutes. *Am. Hosp. Ass'n v. Burwell (AHA I),* 812 F.3d 183, 185-87 (D.C. Cir. 2016), and *Am. Hosp. Ass'n v. Price (AHA II),* 867 F.3d 160 (D.C. Cir. 2017).

43. Under the Medicare Act, the Defendant has a clear duty to comply with their

8

statutory obligation to afford a Medicare provider a timely, full and complete access to the administrative appeal process. Thus, Plaintiff has a clear right to an injunction prohibiting recoupment and ordering Defendant to allow the administrative process, already invoked by Plaintiff to continue to completion.

44. Mandamus jurisdiction under 28 U.S.C. § 1361 permits flexibility in remedy, including injunctive relief. Defendant DHHS's administrative remedies are not capable of affording full relief as to the subject matter in question, as they do not allow the ALJs to give injunctive relief or otherwise redress the irreparable harm that Plaintiff and its patients will suffer absent injunctive relief.

45. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) and 5 U.S.C. § 703.

## MEDICARE AND MEDICAID PROGRAM REQUIREMENTS

46. The Medicare program, set forth in Title XVIII of the Social Security Act, is a federally-administered and funded program that provides payment for, *inter alia,* outpatient physician services to aged or disabled individuals who are eligible for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 426, 42 U.S.C. §§ 1395j – 1395w-6.

47. In order to qualify to receive payments under the Medicare program, each participating provider must be certified as meeting the participation requirements established by federal law. See 42 U.S.C. §§ 1395cc.

48. Under the statute, Defendant DHHS may terminate a provider that "fails to substantially comply" with the provisions of the provider agreement, related statutes and regulations. 42 U.S.C. § 1395cc(b)(2)(A).

49. Defendant DHHS's regulations provide that Plaintiff is entitled to an ALJ hearing. 42 C.F.R. §§ 498.40. Plaintiff has timely submitted its request for an ALJ hearing but has been advised that hearings are backlogged for over 3 years, well past the date upon which recoupment is

scheduled to begin by DHHS, i.e. April 4, 2018. **See Exhibit "C"**.

# COUNT ONE
# PROCEDURAL DUE PROCESS

50. The allegations contained in paragraphs 1 through 49 herein above are incorporated by reference as if fully set out herein.

51. Plaintiff has a property interest in the services it has performed under its provider agreement with DHHS and the compensation it has received from DHHS for those services.

52. The threatened recoupment of the monies paid for those services out of compensation due for presently pending and future services would constitute a taking within the meaning of the Fifth and Fourteenth Amendments to the United States Constitution.

53. The procedure used by DHHS to recoup alleged overpayments to Plaintiff is constitutionally inadequate, because it implements a deprivation or penalty without a pre-deprivation opportunity to be heard or a meaningful and timely post-deprivation hearing on the merits.

54. To satisfy the requirements of procedural due process in these circumstances, DHHS must provide Plaintiff with a pre-deprivation hearing and opportunity to be heard or provide it with a meaningful opportunity to be heard before a neutral and detached hearing officer, post-deprivation.

55. A three year wait to obtain post-deprivation review on the merits is a *per se* constitutional violation of Plaintiff's procedural due process rights.

56. DHHS threatens to deprive Plaintiff of its property and liberty interests in or associated with its Medicare provider agreement and business goodwill without due process of law in violation of the Fifth Amendment of the United States Constitution and other applicable law. Such action threatens to cause irreparable harm to Plaintiff and the community it serves. There is a substantial likelihood that Plaintiff will prevail on the merits when it is given the opportunity to do

so. The issuance of injunctive relief prohibiting the threatened recoupment, which is already in process, until such due process has been had will not harm DHHS and is in the public interest.

## COUNT TWO
## SUBSTANTIVE DUE PROCESS

57. The allegations contained in paragraphs 1 through 56 herein above are incorporated by reference as if fully set out herein.

58. The administrative appeals process utilized by DHHS violates substantive due process in that it hires contractors to review challenges to their overpayment determinations while incentivizing the contractors to find overpayments where none exist.

59. Both Palmetto and C2C, DHHS contractors involved in the administrative appeals process are compensated in the form of contingency fees and bonuses based upon the amount of monies determined to have been over paid and actually recouped.

60. This regulatory scheme is incented to foster fraud and collusion on the part of the contracted entities to falsely increase the number of audited claims and to falsely inflate the number and amounts of such claims determined to be in an overpayment status purely for self-interested financial gain.

61. DHHS' arbitrary and capricious determination that Plaintiff is in an overpayment status on its Medicare reimbursement claims deprives Plaintiff of its substantive property interests, in violation of constitutional due process under the Fifth and Fourteenth Amendments to the United States Constitution and other applicable laws including its own regulation promising an opportunity to challenge an overpayment determination through an evidentiary proceeding on the merits. Failing to provide such a procedural safeguard threatens to cause irreparable harm to Plaintiff and its patients. The issuance of injunctive relief prohibiting such recoupment will not harm the Defendant and is in the public interest.

# COUNT THREE
# PRESERVATION OF STATUS OF RIGHTS UNDER
# SECTION 705 OF THE APA

62. The allegations contained in paragraphs 1 through 61 herein above are incorporated by reference as if fully set out herein.

63. In relevant part, the Administrative Procedure Act provides that "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, *including the court to which a case may be taken on appeal . . .* , may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705 (emphasis added).

64. As outlined above, Plaintiff has meritorious procedural challenges to the actions taken by federal officials in this case and will vigorously assert its arguments during the administrative appeals process that has already been initiated as promptly and expeditiously as possible. If immediate injunctive relief is denied, however, Plaintiff's right to judicial review in this Court could be foreclosed by the inability of Plaintiff to remain in business due to the pending, and in process, recoupment of its Medicare reimbursement payments. Furthermore, Plaintiff and its patient population will suffer irreparable harm.

65. Accordingly, pursuant to 5 U.S.C. § 705, issuance of the injunctive relief sought in this case is necessary and appropriate in order to preserve the Court's jurisdiction to review the result of the administrative appeals process related to the process of recoupment of its Medicare reimbursement payments.

# COUNT FOUR
# INJUNCTIVE RELIEF

66. The allegations contained in paragraphs 1 through 65 herein above are incorporated by reference as if fully set out herein.

67. Defendant's intent to process recoupment of Plaintiff's Medicare reimbursement payments will cause Plaintiff to go out of business imminently or otherwise permanently damage and impair its reputation and ability to serve patients, before it has a chance to participate in a fair administrative hearing or exhaust the administrative process.

68. The involuntary discharge or transfer of Plaintiff's patients will create a substantial risk of irreparable harm to their health.

69. Plaintiff's closure would not only cause it severe and irreparable harm but would also harm the employees of Plaintiff who would lose their jobs.

70. The threat of irreparable harm to Plaintiff and its Medicare beneficiary patients far outweighs any harm Defendant might suffer if injunctive relief is granted. In fact, DHHS cannot show that it will be harmed in any perceptible way by maintaining the status quo. In fact, keeping Plaintiff in business as a going concern will enhance the government's ability to effectuate recoupment if it ultimately prevails on the merits.

71. There is a strong likelihood that Plaintiff will prevail on the merits in contesting the recoupment of Plaintiff's Medicare reimbursement payments. As shown in the attached affidavits of Keith Dockery, M.D. and Anthony Jackson, M.D., the Defendant has misinterpreted standard medical guidelines for the diagnosis of chronic sinusitis, the issue which is the purported basis for the Defendant's determination that Plaintiff has performed medically unnecessary procedures in violation of DHHS's regulations. **See Exhibits "E" and "F".**

72. The injunctive relief requested by Plaintiff will not adversely affect the public interest. The public interest is in no way served by an unwarranted and accelerated shut down of a medical provider that provides care and treatment to thousands of elderly and poor citizens in rural areas of North Carolina, areas which already suffer from a shortage of qualified medical providers.

73. Based upon the irreparable harm demonstrated above, pursuant to Rule 65, FRCP, a

temporary restraining order should be issued enjoining DHHS from recoupment of Plaintiff's Medicare reimbursement payments until such time as a further hearing can be held on Plaintiff's Request for a preliminary injunction pursuant to FRCP Rule 65.

74. Based upon the irreparable harm demonstrated above, a TRO, a preliminary injunction and permanent injunction should be issued enjoining Defendant from recoupment of Plaintiff's Medicare reimbursement payments prior to exhaustion of all administrative proceedings.

## COUNT FIVE
## RELIEF UNDER THE MANDAMUS ACT (28 U.S.C. § 1361)

75. The allegations contained in paragraphs 1 through 74 herein above are incorporated by reference as if fully set out herein.

76. The Mandamus Act, 28 U.S.C. § 1361, vests district courts with original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to Plaintiffs.

77. Under federal law, DHHS has a clear, indisputable, and non-discretionary duty to "conduct and conclude a hearing on a decision of a qualified independent contractor . . . and render a decision on such hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed." 42 U.S.C. §1395ff(d)(1)(A).

78. DHHS has breached this duty by acting in derogation of statute by, inter alia, by failing to hold hearings and render decisions within ninety (90) days at the ALJ level. **See Exhibit "C".**

79. DHHS's delays throughout the appeals process, and most notably at the ALJ level, plainly violate the timetables set forth by Congress in the Medicare Act.

80. DHHS's delays in resolving Medicare appeals affect human health and welfare by compromising the economic well-being of hospitals across the country.

14

81. Absent mandamus, Plaintiff has no adequate remedy. The escalation process provided by 42 U.S.C. § 1395ff(d)(3) does not provide a meaningful option for the reasons that it deprives Plaintiff of its right to a hearing, while imposing costs that threaten the very value of the remedy Plaintiff seeks.

**WHEREFORE**, Plaintiff prays this Court for the following relief:

1. That the Court issue a Temporary Restraining Order pursuant to Rule 65(c) prohibiting DHHS from revoking or terminating recoupment of Plaintiff's Medicare reimbursement payments prior to completion of the administrative process, upon such security bond, if any, as the court determines reasonable;

2. That the Court order DHHS to appear within ten (10) days to show cause why said Temporary Restraining Order should not remain in effect as a preliminary injunction pending the exhaustion of the administrative remedies; and

3. That the Court issue a preliminary and permanent injunction prohibiting the DHHS from recoupment of Plaintiff's Medicare reimbursement payments prior to completion of the administrative process, upon such security bond, if any, as the court determines reasonable; and,

4. That the Court issue a writ of mandamus requiring the Defendant to adhere to its own rules and regulations requiring it to conduct an administrative hearing on the Plaintiff's appeal request, Case No. ALJ1-7432526640, as provided by law within the ninety (90) day period mandated by 42 U.S.C. §1395ff(d)(1)(A); and

5. For such other further relief that the court deems necessary and proper.

This this 7th day of June, 2018.

                                      Respectfully submitted,

                                      /s/ Jose A. Coker
                                      R. Jonathan Charleston
                                      N.C. State Bar No. 14389
                                      Jose A. Coker
                                      N.C. State Bar No. 24878
                                      The Charleston Group
                                      Counsel for Plaintiff
                                      Post Office Box 1762
                                      Fayetteville, NC 28302-1762
                                      Telephone No.: (910) 485-2500
                                      jcharleston@charlestongroup.com
                                      jcoker@charlestongroup.com

                                      Wayne B. Kendall
                                      Georgia Bar No. 414076
                                      Counsel for Plaintiff
                                      155 Bradford Square, Suite B
                                      Fayetteville, GA  30215
                                      Telephone No.: (770) 778-8810
                                      wayne@waynebkendallpc.com

VERIFICATION

Anita L. Jackson, after being first duly sworn, deposed and says that she has read the allegations of the foregoing and knows the contents thereof (including any attached exhibits) to be true and accurate to the best of her own knowledge, except as to those matters and things alleged upon information and belief.

_____
Anita L. Jackson

__Wake_____ COUNTY

STATE OF NORTH CAROLINA

I, __Madeleno Salazar_____ Notary Public in and for said County and State, do hereby certify that Anita Jackson personally appeared before me this day and in my presence executed the foregoing instrument.

WITNESS my Hand and Seal, this the 17th day of May 2018.

_____
NOTARY PUBLIC

MADELENE SALAZAR
Notary Public
Wake Co., North Carolina
My Commission Expires July 27, 2022